IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.*, *ex rel.* STAN ELLIS : : : | |
| v. : | CIVIL ACTION No. 16-1582 |
| : | |
| CVS HEALTH CORPORATION, *et al.* : | |

**McHUGH, J.**                                                                                            **August 15, 2024**

**MEMORANDUM**

This is a *qui tam* action against CVS Health Corporation. The relator, Stan Ellis, claims CVS knowingly sought reimbursement for pharmaceuticals that lost their efficacy as a result of flash freezing in the shipping process. In the course of discovery, CVS has asserted attorney-client privilege and work-product protection over several hundred documents for which Ellis now seeks to compel production. The documents relate to work performed on CVS' behalf by a company called The Illuminate Group, which offers "cold chain" shipping expertise. In June, 2024, I ordered CVS to submit the disputed documents and privilege logs for *in-camera* review. ECF 134. After this review, I conclude that CVS has incorrectly claimed privilege and work-product protection over a significant portion of the documents. An accompanying order will identify the documents CVS must produce to Ellis in discovery.

**I.      Attorney-Client Privilege**

The attorney-client privilege applies to "(1) a communication (2) made between privileged persons (3) in confidence (4) for the purpose of obtaining or providing legal assistance for the client. 'Privileged persons' include the client, the attorney(s), and any of their agents that help facilitate attorney-client communications or the legal representation." *In re Grand Jury*, 705 F.3d 133, 160 (3d Cir. 2012) (citations omitted). The party asserting the privilege bears the burden of

establishing these elements. *Id.* (citations omitted). "Because the attorney-client privilege obstructs the truth-finding process, it is construed narrowly." *Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1423 (3d Cir. 1991) (citations omitted).

From 2010 to 2015, CVS hired Illuminate to complete various testing, development, and validation on "cold chain" shipping techniques. In an attempt to create attorney-client privilege over its dealings with Illuminate, CVS hired an outside law firm, Quarles & Brady, as a middleman to contract and coordinate with Illuminate on CVS' behalf. *See* Priv_0005637 (internal CVS non-attorney email) ("We have been requested by Corp compliance to do a full assessment of our respective cold chain process . . . to better understand what the enterprise should be concerned about . . . . The biggest issue has been the use of outside attny to keep it Privileged."). As a result, CVS claims that Illuminate served as an agent of Quarles, and contact between CVS and Illuminate should be characterized as facilitating Quarles' legal advice. Applying this logic, CVS asserts attorney-client privilege over a wide swath of communications and documents, including internal emails that do not directly implicate Quarles or Illuminate. *See* Def.'s Opp'n Br. at 12.

I reject such a broad claim of attorney-client privilege over Illuminate's work and communications with CVS. The documents reveal that CVS' arrangement to route Illuminate's work through Quarles & Brady was, in many instances, a fiction that even CVS employees openly acknowledged. *See, e.g.*, Priv_0004030 (internal CVS non-attorney email) ("Todd engaged Illuminate for [Statement of Work] execution, and Quarrels and Brady stepped in to execute because this work is *technically* work that Illuminate is doing for Quarrels and Brady on behalf of CVS." (emphasis added)). Throughout the period at issue, CVS personnel repeatedly coordinated directly with Illuminate regarding clear matters of business development. And in these documents and communications, cost reduction and business logistics remained the primary concerns. These

documents are therefore not protected by the attorney-client privilege.  In so finding, I reiterate the consensus in this court that the "attorney-client privilege does not shield documents merely because they were transferred to or routed through an attorney." *SmithKline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467, 478 (E.D. Pa. 2005) (Surrick, J.) (quotation and citation omitted); *In re Generic Pharms. Pricing Antitrust Litig.*, 432 F. Supp. 3d 490, 493 (E.D. Pa. 2020) (Rufe, J.) ("[T]he privilege does not apply when an attorney is merely conveying to his client the substance of what a third party has conveyed."); *see also F.T.C. v. Abbvie, Inc.*, 2015 WL 8623076, at *3 (E.D. Pa. Dec. 14, 2015) (Bartle, J.) ("[T]he corporation must clearly demonstrate that the communication in question was made for the express purpose of securing legal not business advice.").

CVS also tries to extend attorney-client privilege over internal business discussions among non-attorneys at CVS, which implicate or reference Illuminate's work.  CVS describes these documents in its privilege log as "reflecting the request for information to assist in rendering legal advice."  *See generally* Def.'s App'x B & C Priv. Logs.  I find such a description remarkably unhelpful, and I reject such an expansive view of attorney-client privilege over documents that contain no obvious legal advice or requests for legal advice, but instead reflect CVS' efforts to improve its cold chain shipping procedures in a cost-effective manner.  *See SmithKline*, 232 F.R.D. at 478 ("What would otherwise be routine, non-privileged communications between corporate officers or employees transacting the general business of the company do not attain privileged status solely because in-house or outside counsel is 'copied in' on correspondence or memoranda." (quotation and citation omitted)).

Lastly, CVS attempts to draw a distinction between various phases of Illuminate's work: first, an assessment in 2012 of candidates to supply new cold chain shipping materials to CVS;

3

second, a subsequent project to "tweak" the candidates' submissions; and third, an on-going project to test and validate CVS' then-existing cold chain shipping processes. CVS concedes that Illuminate's candidate assessment was a business activity and therefore not privileged, but it claims this other work was done to facilitate Quarles' legal advice. After reviewing the documents, I see no basis for such a rigid business-versus-legal distinction. CVS procurement specialists dealt directly with Illuminate throughout the period at issue, and much of those discussions concerned business decisions.

In that regard, CVS competes in a marketplace that by definition requires compliance with various governmental regulations. This is simply a reality of the business, and such compliance is a necessary element of its remaining competitive. That does not transform every decision about CVS' products or processes into a legal question. And the ploy of using counsel as an intermediary for what is clearly advice serving CVS' business needs should not be endorsed by a court. Where the documents contain actual legal advice or what can be fairly construed as requests for that advice, I have upheld CVS' invocation of attorney-client privilege, but I reject the distinction CVS attempts to draw to shield many of the documents in dispute.

Below are representative examples of documents over which CVS has incorrectly asserted attorney-client privilege (with emphasis added throughout):

- Priv_0003929 (CVS non-attorney email to Illuminate non-attorney):
  "I was hoping you could provide me a brief e-mail on where we currently are in the testing process . . . . Last I have understood is that **we are currently trying to figure out what the cost of the current EPS cooler solution is to the potential new EPS cooler solution** . . . ."

- Priv_0000996 (CVS non-attorney email to Illuminate non-attorney):
  "**Would [] the DIM weight be too high?** . . . [C]an you send me a summary of what was tested till today and which one we are waiting for and so on . . . . I want to schedule a status meeting very soon." (DIM weight refers to "dimensional weight," a pricing metric for shipping.)

4

- Priv_0004837 (internal CVS non-attorney email):
  "**Proposed solutions [by Illuminate] are not optimal operationally or fiscally** . . . . Asking them to adjust packouts & retest based on lower number of gel packs . . . . **Redesigned small box will cost us more money in shipping** . . . ."

- Priv_0002249 (internal CVS non-attorney memo):
  "Illuminate provides an update on the testing, and it is determined that all solutions could be made to work if they 'tweak' the packout. CVS asks Illuminate to make all packages work, even the EPS cooler. Frank Devlin, Loss Prevention, is brought in to assist because the work is being performed under privilege. **EPS is tested again with Illuminate's packout because it is the most cost effective solution**."

CVS will be ordered to produce these and other documents with similar content.[1]

## II.   Work-Product Doctrine

"The work-product doctrine protects from discovery materials prepared or collected by an attorney in the course of preparation for possible litigation." *In re Grand Jury Subpoena*, 745 F.3d 681, 693 (3d Cir. 2014) (cleaned up). "In limiting work product to materials prepared 'in anticipation of litigation,' the drafters of Rule 26(b)(3) excluded from the rule's protection '[m]aterials assembled in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for other nonlitigation purposes.'" *Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d 1252, 1260 (3d Cir. 1993) (citing Fed. R. Civ. P. 26(b)(3) advisory committee note).

CVS asserts work-product protection for all of the documents over which it also asserts attorney-client privilege. CVS points vaguely to regulatory inquiries it received from various state boards of pharmacy from 2009 until 2015 about its cold chain shipping processes. It claims as a result that this "pervasive regulatory focus . . . motivated Quarles & Brady's work" in hiring Illuminate "to conduct work in anticipation of these existing and future inquiries." Def.'s Opp'n

---

[1] CVS also claims that "Relator's privilege arguments regarding Illuminate have already been litigated, and rejected, in a similar suit almost a decade ago." Def.'s Opp'n Br. at 7 (citing Ex. N, *Bertram v. Immunex Corp.*, No. BC560903 (Cal. Super. Ct., May 24, 2016)). But I place no weight on this persuasive authority, as the court there upheld CVS' privilege claims in cursory fashion and without *in camera* review.

Br. at 22. Thus, CVS contends that Illuminate's work was done in "anticipation of litigation sufficient to trigger work product protection throughout the 2010-2015 time period." *Id.*

I disagree with CVS' aggressive application of the work-product doctrine. The need to maintain regulatory compliance was inherent to CVS' business of shipping temperature-sensitive pharmaceuticals, and as discussed above, a large portion of the documents primarily address business considerations by non-attorneys at CVS and Illuminate, such as cost reduction and shipping efficiencies. Nor do these documents make any reference or allusion to specific regulatory inquiries or pending or possible litigation. Rather, they fall within the realm of documents made in the course of meeting "public requirements." *Martin*, 983 F.2d at 1260 (citing Fed. R. Civ. P. 26(b)(3) advisory committee note). CVS has not shown that work-product protection is appropriate for all, yet alone most, of the disputed documents. By way of example:

- Priv_0003558 (internal CVS non-attorney email):
  "We learned from the Third party testing/Illuminate two weeks ago that [certain types of coolers] were not tested in the lab. They stated that they received direction at that time from Brad [a CVS logistics director] to not continue with the lab testing because CVS Caremark was not interested in the Styrofoam cooler any longer."

It is in no way apparent that this message, or the content it conveys, reflects information created in preparation or anticipation of litigation. And CVS' privilege log confusingly describes this document as an "[e]mail chain reflecting the request for information to assist in rendering legal advice regarding regulatory-compliance issues related to cold chain packaging." Def.'s App'x C Priv. Log at 4.

- Priv_0003407 (internal CVS presentation):
  "[The benefits of Illuminate's cold-chain work include]: Longer transit times possible. Avoid Flash Freezing. Package requires less storage space. Packaging complies with flammability and insurance standards. Documented test results (compliance, legal, PPG)."

This document mentions "legal" and "compliance" among the benefits of receiving documented test results from Illuminate, but it makes no reference to pending litigation. CVS' privilege log

describes this document as a "Powerpoint presentation reflecting the request for and provision of information to assist in rendering legal advice regarding regulatory-compliance issues related to cold chain packaging." Def.'s App'x C Priv. Log at 3. Where actual legal advice is conveyed or sought, it is protected by the attorney-client privilege, and where documents appear responsive to potential litigation, they are protected by the work-product doctrine. But CVS has failed to show that this internal presentation, like many other documents in dispute, was made "in anticipation of litigation" to warrant work-product protection.

CVS will be ordered to produce these and other documents with similar content.

**III.   Conclusion**

As to many of the documents at issue, CVS has failed to show that they contain or reflect legal advice or requests for legal advice, or that they were prepared in anticipation of litigation of any kind. A credible argument could even be made that even where privilege exists, CVS waived it because of the amount of direct communication they maintained with Illuminate with no involvement by counsel of any kind. In resolving this motion, I have therefore given CVS more than the benefit of the doubt for a relationship that was created for seemingly no other reason than to prevent a window into its process of improving its cold chain "pack-out." I will grant in part and deny in part Ellis' motion to compel. An appropriate order follows, identifying documents which CVS must provide in discovery.

<u>/s/ Gerald Austin McHugh</u>
United States District Judge